**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY GREJDA,** | ) | |
| **Plaintiff** | ) | **C.A. 11-184 Erie** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **ARCHIE B. LONGLEY, et al.,** | ) | |
| **Defendants.** | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


### I.      RECOMMENDATION

It is respectfully recommended that Defendant's motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 10], be granted.


### II.     REPORT

#### A.      Relevant Procedural History

On September 1, 2011, Plaintiff Anthony Grejda, a prisoner formerly incarcerated[1] at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this civil rights action pursuant to Bivens v Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Named as Defendants are: Archie B. Longley, former Warden at FCI-McKean ("Longley"); Walter L. Rhinehart, Chief Psychologist at FCI-McKean ("Rhinehart"); and Kent W. Cannon, Drug Abuse Program Coordinator at FCI-McKean ("Cannon").

In his *pro se* Complaint [ECF No. 1] Plaintiff claims that he was expelled from FCI-McKean's Residential Drug Abuse Program ("RDAP") in violation of his rights under

---

[1]

Plaintiff is currently incarcerated at the FCI-Schuylkill in Minsersville, Pennsylvania

the first and fifth amendments to the United States Constitution, thus rendering him ineligible for reduction of his sentence and early release pursuant to 18 U.S.C. § 3621(e)(2)(B). In particular, Plaintiff claims that: (i) his removal from the RDAP program violated his First Amendment right not to discuss his criminal case during RDAP therapy sessions (ECF No. 1, Complaint, at ¶¶ 77-83); (ii) his expulsion from the RDAP program violated his Fifth Amendment equal protection rights (Id. at ¶¶ 86-100); (iii) he was unlawfully removed from the RDAP program pursuant to an *ex post facto* law, rule and/or regulation (Id. at ¶¶ 104-116); (iv) he was removed from the RDAP program in violation of his procedural due process rights under the Fifth Amendment (Id. at ¶¶ 118-140); (v) he was transferred to another federal correctional institution located farther from his family and fiancé, and withheld information requested under the Freedom of Information Act ("FOIA"), in retaliation for his challenge of the RDAP practices at FCI-McKean (Id. at ¶¶ 84, 142-158); (vi) he was removed from the RDAP program in violation of his substantive due process rights under the Fifth Amendment (Id. at ¶¶ 160-174). As relief for his claims, Plaintiff seeks only injunctive relief in the form of reinstatement to the RDAP program at FCI-Schuylkill with full credit for the portion of the program he completed prior to his expulsion at FCI-McKean.

On February 10, 2012, Defendants filed a motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 10], asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies with regard to two of his claims, and that Plaintiff's remaining claims should be dismissed because they must be brought in a petition for writ of *habeas corpus*. Despite having been granted a generous extension of time to respond to Defendants' motion (See Text Order dated March 9, 2012, granting extension until April 30, 2012), Plaintiff has failed to file an opposition brief. This matter is now ripe for consideration.

**B.**     **Relevant Factual History**

Plaintiff is a former licensed pharmacist who, after entering a guilty plea, was convicted of Conspiracy, Health Care Fraud, and Distribution of Hydrocodone in violation of 18 U.S.C. §§ 371 and 1347 and 21 U.S.C. § 841. (ECF No. 1, Complaint, at ¶¶ 24-25; ECF No. 11-4, Criminal Judgment and Commitment Orders, at pp. 4-6, 11-13). On April 25, 2008, Plaintiff was sentenced to a 57-month term of imprisonment followed by a 36-month term of supervised release. (Id.). In light of Plaintiff's history of alcohol abuse, the sentencing judge also recommended that Plaintiff "be able to participate in the 500-hour residential treatment program" during his incarceration. (Id. at pp. 5, 12). Assuming Plaintiff receives all good conduct time available under 18 U.S.C. § 3624(b), Plaintiff's projected release date is September 10, 2012. (ECF No. 11-1 at p. 6).

Plaintiff was designated to FCI-McKean on July 23, 2008. (ECF No. 11-2 at p. 18). Sometime after his arrival at FCI-McKean, Plaintiff received a notice from Defendant Cannon indicating that he was qualified for the residential drug abuse program ("RDAP") and was potentially eligible for early release upon successful completion of the program. (ECF No. 11-5 at p. 12). Accordingly, on January 5, 2009, Plaintiff signed an agreement to participate in the RDAP program, in which Plaintiff agreed, among other things, to "accept responsibility for not disclosing inmate information," and to actively participate in group sessions, including "appropriate self-disclosure and providing feedback." (ECF No. 11-5 at pp. 7-8). Plaintiff further acknowledged his understanding that if he chose to withdraw or got expelled from the program, he would lose his eligibility for early release consideration. (Id.).

On the same date, Plaintiff also signed an "Agreement to Participate in a BOP Community Transition Program," which stated that "all program participants have been informed and understand that they may be expelled from the program for failure to comply with program rules and regulations." (ECF No. 11-5 at p. 10). Plaintiff subsequently commenced participation in the RDAP program at FCI-McKean on February 25, 2010. (ECF No. 11-2 at p 20).

Plaintiff continued his participation in the RDAP program until October 26, 2010, at which time he was expelled from the program and rendered ineligible for a sentence reduction and early release under 18 U.S.C. § 3621(e)(2)(B). (ECF No. 11-5 at p. 50). To explain the reasons for Plaintiff's expulsion from the program, Defendants have submitted the Declaration of Defendant Rhinehart, who provides the following detailed summary of Plaintiff's continual pattern of non-compliance and disruptive behavior that led to his expulsion:

6.      Inmate Grejda's records reflect that as early as April 30, 2010, he was advised of the need for him to increase his participation in RDAP psychotherapy groups. The [psychology systems database "PDS"] notations ... reflect that after this issue was identified, he circumvented the identified issues by rationalizing to staff that participation would place him at risk of danger of physical assaults by other inmates. He also denied during psychotherapy groups that he committed a criminal offense, and he side-stepped the treatment activity of self-disclosing personal characteristics that contributed to his substance abuse problems. Inmate Grejda's failure and refusal to participate in RDAP treatment was disruptive to his RDAP cohort, and the impact of his behavior upon the group became more disruptive as the group approached completion of the RDAP program. Specifically, inmate Grejda's behavior directly interfered with the treatment specialists' ability to establish and maintain a therapeutic treatment process for the whole treatment group. It is specifically noted that during a community meeting of approximately 120 inmates and staff on October 18, 2010, inmate Grejda denied he committed a criminal offense, which is a lie and is a violation of his agreement to participate in the RDAP. When another inmate in the community meeting tried to assist inmate Grejda to come to terms with his past behavior, inmate Grejda was dismissive and denied he was motivated by greed. His denial interfered with the group's psychotherapy process. RDAP is a voluntary program. If an inmate will not participate in RDAP for any reason, including the inmate's perception that participating in RDAP group/community meetings would place him at risk of personal danger, the inmate may withdraw from RDAP without disciplinary consequences.

7.      Despite the fact that inmate Grejda was given repeated warnings regarding his level and quality of participation in the RDAP, it was my belief that direct communication with him could help him to change his behavior. It was my belief that during the October 22, 2010 interview, the treatment team would be able to ask him questions that would enable him to drop his defenses and become amenable to identify his past behaviors and

4

> beliefs that contributed to his substance abuse problem. If he showed he was capable of open and frank discussion about himself during his interview, he would be able to continue with the RDAP. Unfortunately, during the interview, inmate Grejda refused to candidly, honestly, and earnestly discuss his personal history and behaviors. Indeed, as noted in the PDS notation, he would not even disclose to me whether he had a doctorate in pharmacology. Given the fact that he had been in the RDAP since February 25, 2010, and had been advised regularly since April 30 2010, of the need to start participating in RDAP programming, his continued refusal to actively participate in RDAP treatment just like all of the other RDAP participants, was a reasonable ground for expulsion.

(ECF No. 11-6, Declaration of Walter L. Rhinehart, Psy.D., at ¶¶ 6-7).

Plaintiff was subsequently designated to the Satellite Prison Camp at FCI Schuylkill on April 25, 2011. (ECF No. 11-2 at p. 18).


### C.    Standards of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

## 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2)  provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e)(2) further provides that when a motion for summary judgment is

made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all

reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson, 477 U.S. at 248.  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 247-249.


### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.


### D.    Exhaustion of Administrative Remedies

Defendants contend that Plaintiff's claims of retaliation (designated as the "Seventh Cause of Action" in the complaint) and violation of substantive due process arising from the alleged falsification of RDAP documents (designated as the "Tenth Cause of Action" in the complaint), should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[2]

### 1.    Exhaustion Standard

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is

---

[2]

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

[3]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that ¢1997e(a) is not a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

federal law which federal district courts are required to follow.  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. <u>Woodford v. Ngo</u>, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." <u>Id.</u> at 83; <u>see also</u> <u>Spruill v. Gillis</u>,  372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

## 2.      The Administrative Process Available to Federal Inmates

No analysis of exhaustion may be made absent an understanding of the administrative process available to federal inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to

---

[4]

There is no "futility" exception to the administrative exhaustion requirement.  <u>Banks v. Roberts,</u> 2007 WL 3096585, at * 1 (3d Cir.) <u>citing</u> <u>Nyhuis</u>, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  <u>See</u> <u>also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### 3. Analysis

In support of their contention that Plaintiff failed to exhaust his administrative remedies with regard to his retaliation and substantive due process (re: falsification of RDAP documents) claims, Defendants have submitted the Declaration of Vanessa Herbin-Smith, Supervisory Paralegal at the BOP's Northeast Regional Office, who declares the following:

> 6. Following a search of inmate Grejda's computerized administrative remedy record, I determined he had exhausted his available administrative remedies with respect to his expulsion from the Residential Drug Abuse Treatment Program (RDAP) at

> FCI McKean (Administrative Remedy Case Number 614471).
> Inmate Grejda's administrative remedy records reflect that to
> date, he has not filed any administrative remedy requests or
> appeals in which he alleges his RDAP records were falsified or
> that he was either placed in the Special Housing Unit (SHU) at
> FCI McKean or transferred to FCI Schuylkill in retaliation for
> challenging his expulsion from RDAP, or that there was a delay
> in the processing of document requests filed under the Freedom
> of Information Act.

(ECF No. 11-1, Declaration of Vanessa Herbin-Smith, at ¶ 6).

Plaintiff has failed to present any evidence or argument in opposition to Ms. Herbin-Smith's Declaration, which makes clear that Plaintiff has failed to exhaust his administrative remedies with regard to either his retaliation claims, or his substantive due process arising from the alleged falsification of RDAP documents, and is now procedurally defaulted from doing so. As a result, summary judgment should be entered in favor of Defendants on such claims.

### E.     Discussion

#### 1.     Civil Action v. Habeas Corpus

All of Plaintiff's remaining claims challenge Plaintiff's expulsion from the RDAP program and the resultant denial of eligibility for sentence reduction and early release under 18 U.S.C. § 3621(e)(2)(B). As a result, Defendants assert that such claims should be dismissed because they are improperly raised in a civil rights action and must, instead, be brought by way of a petition for writ of *habeas corpus*. In particular, Defendants argue that "Plaintiff is actually challenging the execution of his federal sentence which is more appropriately presented in a petition for writ of habeas corpus and *not* the *Bivens* action presently before the Court." (ECF No. 11, Defendants' Brief, at p. 16). The Court disagrees.

In the prison context, *Bivens* actions generally involve challenges to conditions of an inmate's confinement. See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)(holding that "when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 [the state

counterpart to *Bivens*] is appropriate"). However, "whenever the challenge ultimately attacks the 'core of habeas' - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition." Id. Defendants assert that the latter circumstance is presented here because, if Plaintiff is granted his request for reinstatement to the RDAP and successfully completes the program, he would then be eligible for a sentence reduction and early release. However, the fallacy of Defendants' argument is that it assumes that (i) Plaintiff will successfully complete the RDAP if reinstated and (ii) upon completion, he will not only be eligible for, but in fact receive, a sentence reduction and/or early release under 18 U.S.C. § 3621(e)(2)(B). Neither consequence is a given.[5]

The circumstances in this case are unlike those presented in the seminal case of Preiser v. Rodriguez, 411 U.S. 475 (1973), wherein the plaintiffs brought a civil rights action seeking restoration of good-conduct-time credits that would result in their immediate release from incarceration. Id. at 476-477. The Supreme Court found that such a challenge "goes directly to the constitutionality of [a prisoner's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." Id. at 489. As such, the relief sought by the plaintiffs in Preiser was found to be improper in a civil rights action, and habeas

---

[5]

With regard to sentence reduction and/or early release, 18 U.S.C. § 3621(e)(2)(B) provides:

**(2) Incentive for prisoner's successful completion of treatment program –**

            *                     *                     *

    (B) **Period of custody.–** The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program **may be reduced** by the Bureau of Prisons, but such reduction **may not be more than one year** from the term the prisoner must otherwise serve.

(Emphasis added). The plain language of the foregoing statute indicates that any reduction in sentence resulting from completion of a treatment program, such as RDAP, is purely discretionary and may be for any period of time, up to a maximum of one year.

corpus was deemed the appropriate remedy for prisoners seeking such relief.  Id. at 490.[6]

In contrast to Preiser, granting the relief requested by Plaintiff in this case would not ensure his immediate release or reduction of his sentence.  Instead, reinstatement into the RDAP program would merely allow Plaintiff the opportunity to complete the program, which would then make him eligible for a discretionary sentence reduction.  Thus, contrary to Defendants' assertions, the execution of Plaintiff's sentence is not directly implicated by the relief sought here.  Accordingly, Defendants' motion to dismiss Plaintiff's claims because they are improperly raised in a civil rights action should be denied.

## 2.    First Amendment Claim

Plaintiff claims that his removal from the RDAP was "based solely upon [his] alleged unwillingness to discuss [his underlying] drug case," and, thus, violated his "First Amendment right not to speak about the drug case...." (ECF No. 1, Complaint, at ¶¶ 81-82).  Plaintiff alleges that he did not speak about his drug offenses because government prosecutors told him not to discuss details of his case to avoid disclosing any information that could compromise his ability to act as a government witness in other prosecutions. (Id. at ¶ 80).  Defendants argue that this claim should be dismissed because (i) it is based upon the faulty premise that Plaintiff was expelled from the RDAP solely because he refused to discuss the details of his criminal offense, and (ii) the RDAP's requirement that inmates discuss their criminal offenses during confidential treatment sessions serves a legitimate penological interest that overrides Plaintiff's First Amendment protection.  Both of Defendants' arguments have merit.

First, the record is clear that the decision to expel Plaintiff from the RDAP was due to

---

6

Although Preiser involved a civil action brought by state inmates under 42 U.S.C. § 1983, a Bivens action is the federal equivalent of a § 1983 action and, thus, Preiser's holding has been uniformly applied to Bivens actions as well.

his continual lack of participation and disruptive behavior.  In particular, Plaintiff denied he ever committed an offense, failed to self-disclose personal characteristics, treated other inmates dismissively, and engaged in deceptive conduct. (See ECF No. 11-6, Declaration of Walter L. Rhinehart, Psy.D., at ¶¶ 6-7).  Thus, Plaintiff is unable to show that his removal from the RDAP  was based on reasons that violated his First Amendment rights.  See Parsons v Quintana, 2010 WL 324005 at * 7 (W.D.Pa. Jan. 20, 2010)(finding no First Amendment violation where inmate's refusal to recite philosophy statement was not the sole reason for his RDAP expulsion).

Second, an inmate's First Amendment rights are limited and may be curtailed depending upon the prison's legitimate penological objectives.  See Newman v Beard, 617 F.3d 775, 781 (3d Cir. 2010)("it is settled law that an inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system'")(quoting Pell v Procunier, 417 U.S. 817, 822 (1974)); Turner v Safley, 482 U.S. 78, 89 (1987)("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonable related to legitimate penological interests").  Thus, even if Plaintiff was removed from the program due to his refusal to discuss his criminal offenses, the RDAP policy of requiring inmates to discuss their criminal offenses serves the legitimate penological interest of rehabilitation.  See McCune v Lile, 536 U.S. 24, 33 (2002)(finding that the government has a "vital interest" in rehabilitation and "accepting responsibility for past offenses" is a "critical first step").

Based on the foregoing, therefore, summary judgment should be granted in favor of Defendants on Plaintiff's First Amendment claim.

### 3.    Due Process Claims

Plaintiff has raised a number of substantive and/or procedural due process claims stemming from his expulsion from the RDAP.

The Due Process Clause, guaranteed through the Fourteenth Amendment of the United States Constitution, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amends. V; XIV. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

### a. Substantive Due Process

The constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them. Foucha v. Louisiana, 504 U.S. 71, 80 (1990). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause. County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (clarifying that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."). A substantive due process claim based upon alleged arbitrary and capricious action is not easily mounted, because the relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the

Third Circuit has termed "conscience shocking." Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002). This Circuit has made clear that "only the most egregious conduct will be considered arbitrary in the constitutional sense." Id. at 247-48.

Nothing in the complaint rises to the level of conscience shocking behavior that would support a substantive due process claim. Accordingly, summary judgment should be entered in favor of Defendants with regard to Plaintiff's substantive due process claims.

**b.**     **Procedural Due Process**

The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing, before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must demonstrate that he has been deprived of a constitutionally-protected property or liberty interest. Daniels, 474 U.S. at 339. If a person does not have a constitutionally-protected interest, he is not entitled to the procedural protections afforded by the Due Process Clause.

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt v. Helms, 459 U.S. 460, 466 (1983). Here, it is well-settled that "inmates do not have a protected liberty interest in either RDAP participation or in the associated early release benefit." Reeb v Thomas, 636 F.3d 1224, 1129 n. 4 (9th Cir. 2011), citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) (determining that a prisoner does not have a constitutional right to be released prior to the expiration of a valid sentence). See also Royal v. Scibana, 309 Fed. Appx. 284, 286 (10th Cir. 2009)("We have held that a prisoner does not possess a constitutional right to a reduction of a valid sentence, and that § 3621(e)(2)(B) does not confer upon a prisoner a constitutionally-protected liberty interest")(citation omitted); Richardson v. Joslin, 501 F.3d 415, 420 (5th Cir. 2007) (finding no protected liberty interest in § 3621(e)(2)(B)); Venegas v Henman, 126 F3d

760, 765 (5th Cir. 1997)("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest"); Kotz v. Lappin, 515 F.Supp.2d 143, 149-50 (D.D.C. 2007)(inmate had no constitutionally protected liberty interest in participating in RDAP and receiving a reduced sentence); Robinson v. Gonzales, 493 F.Supp.2d 758, 763 (D.Md. 2007)("Where, as here, there is no protected liberty interest in discretionary early release for completing the RDAP program, there is no constitutional claim for denial of due process"); Parsons v. Quintana, 2010 WL 324005, at *7 (W.D.Pa. Jan. 20, 2010)(inmate has no liberty interest in a sentence reduction under § 3621(e)(2)(B)).

Because Plaintiff does not have a protected liberty interest in either RDAP participation or its associated early release benefit, he cannot support a claim based upon a violation of his procedural due process rights, and summary judgment should be entered in favor of Defendants with regard to such claim.

### 4. Equal Protection Claim

Plaintiff alleges that he was treated differently from other "similarly situated" inmates when he was immediately removed from the RDAP without warning. (ECF No. 1, Complaint, at ¶¶ 85-102). Plaintiff claims that this "unequal treatment was the result of intentional and/or purposeful discrimination," and violated his right to equal protection.

Since this is an action against federal employees, only the Fifth Amendment would be applicable to Plaintiff's claims. Although the Fifth Amendment does not contain an equal protection clause, "'the Fifth Amendment's Due Process Clause prohibits the Federal Government from engaging in discrimination that is so unjustifiable as to be violative of due process.'" Abdul-Akbar v. McKelvie, 239 F.3d 307, 316 (3d Cir. 2001)(en banc), cert. denied, 533 U.S. 953 (2001), quoting Schlesinger v. Ballard, 419 U.S. 498, 500 n.3 (1975). Accordingly, the Supreme Court has construed the Fifth Amendment to contain an equal

protection guarantee. <u>Edmonson v. Leesville Concrete Co., Inc.</u>, 500 U.S. 614, 616 (1991); <u>Abdul-Akbar</u>, 239 F.3d at 316-17.  In this context, Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment.  <u>Adarand Constructors, Inc. v. Pena</u>, 515 U.S. 200, 217 (1995); <u>Abdul-Akbar</u>, 239 F.3d at 317.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike' "  <u>Artway v. Attorney General of State of N.J.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996), <u>quoting</u> <u>City of Cleburne, Tex. v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  "When a state policy does not adversely affect a suspect class or impinge upon a fundamental right, all that is constitutionally required of the state's program is that it be rationally related to a legitimate state object." <u>Coakley v. Murphy</u>, 884 F.2d 1218, 1222 (9th Cir. 1989), <u>citing</u> <u>Massachusetts Bd. Of Retirement v. Murgia</u>, 427 U.S. 307, 314 (1976).

Thus, classifications involving a suspect or quasi-suspect class, or actions that impact certain fundamental constitutional rights, are subject to heightened or "strict" scrutiny.  <u>City of Cleburne</u>, 473 U.S. at 439.  Other classifications are subject to the "rational basis" test, which requires that a classification need only be rationally related to a legitimate state interest to survive an equal protection challenge.  <u>F.C.C. v. Beach Communications, Inc.</u>, 508 U.S. 307 (1993) (state action that does not affect a suspect category or infringe on a fundamental constitutional right must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification); <u>Chapman v. United States</u>, 500 U.S. 453, 465 (1991).

### a.      Classification

Plaintiff has not alleged that he is a member of a suspect class.  Furthermore, it is well settled that prison inmates are not a suspect class.  <u>Abdul-Akbar</u>, 239 F.3d at 317; <u>See</u> <u>also</u>

<u>Nicholas v. Tucker</u>, 114 F.3d 17, 20 (2d Cir. 1997) (inmates are not suspect class so as to require more exacting scrutiny), <u>cert</u>. <u>denied</u>, 523 U.S. 1126 (1998); <u>Hampton v. Hobbs</u>, 106 F.3d 1281, 1286 (6th Cir. 1997); <u>Zehner v. Trigg</u>, 133 F.3d 459, 463 (7th Cir. 1997).

### <u>b.</u>     <u>Fundamental Right</u>

With respect to whether a fundamental right has been affected, Plaintiff is essentially arguing that he lost the opportunity for an early release that completion of the RDAP would offer. However, as noted in this Court's discussion of Plaintiff's due process claims, Plaintiff does not have a fundamental right to either participate in the RDAP or to obtain eligibility for a sentence reduction or early release under 18 U.S.C. § 3621(e)(2)(B).

### <u>c.</u>     <u>Others Similarly Situated</u>

There being no suspect class or fundamental right at issue, Plaintiff must show that the treatment he received (ie, expulsion from the RDAP allegedly without warning) was unlike that received by inmates similarly situated to him and was not rationally related to a legitimate government interest. Plaintiff has attempted to define a similarly situated class of inmates by alleging that "[i]nmates who were not proceeding satisfactorily in treatment received lesser sanctions and their records reflect they were given multiple interventions (warnings) and multiple opportunities to correct the problems." (ECF No. 1, Complaint, at ¶ 92). In particular, Plaintiff has identified 18 FCI-McKean inmates who allegedly violated RDAP rules, yet received warnings and were not removed from the program. (<u>Id</u>. at ¶ 94). However, Plaintiff has failed to offer any support for his contention that these inmates were similarly situated to him. In fact, a closer look at Plaintiff's RDAP history in comparison to the RDAP histories of the 18 inmates listed in the complaint reveals that said inmates were not similarly situated to Plaintiff. Most significantly, Plaintiff's claim is based on the faulty premise that he was expelled from the RDAP without warning, while other "similarly situated" inmates remained in

the program even though they had allegedly received one or two warnings for comparable behavior.

As noted earlier, the record reflects that Plaintiff received multiple warnings for his failure to participate in the RDAP, and he was given numerous opportunities to correct his behavior. Plaintiff was told to increase his participation on April 30, 2010, after it was noted that he was presenting his alcohol problem in a manner that could be interpreted as "fraudulent" and that "he was only trying to get released from prison earlier." (ECF No. 11-5 at p. 16). During his 60-day review on May 26, 2010, Plaintiff was again notified that he needed to increase his level of participation, although his participation was still deemed acceptable at that point. (Id. at p. 19). On September 14, 2010, Plaintiff received a verbal warning that "he is jeopardizing his current placement in treatment as he is not participating at an acceptable level outside of group therapy." (Id. at p. 23). A week later, at his 60-day review on September 21, 2010, it was noted that "[Plaintiff] was given feedback by the RDAP team and ha[d] not followed through with the recommendations made." (Id. at p. 26). As a result, Plaintiff was warned that he was placing himself "in jeopardy of further sanctions from the RDAP Team," and that "[f]ailure to participate as stated may result in DAP Warnings and possible removal from the [RDAP] Community." (Id.).

On October 15, 2010, a 60-day review summary addendum was drafted by Plaintiff's drug abuse treatment specialist stating that "[t]his inmate needs to participate more in community by more openly discussing in group any behaviors which other members of the community are engaging in which are undermining the effectiveness of my therapeutic community and treatment progress." (Id. at p. 28). This summary was signed by Plaintiff, who acknowledged that "by signing this document... I have been formally warned that any negative situation which results in an incident report and/or a DAP Warning may result in my immediate expulsion from RDAP." (Id. at p. 29). However, Plaintiff continued to be non-compliant.

On October 18, 2010, Plaintiff's drug abuse treatment specialist wrote an evaluation report indicating that "[b]y his vagueness and inconsistent answers [Plaintiff] appears not to be meeting the RDAP's expectations for how long he has been engaged in treatment." (Id. at p. 31). Finally, on October 26, 2010, Plaintiff was interviewed by the RDAP treatment team and Defendant Rhinehart "in response to the treatment team's unanimous concerns that [Plaintiff] was not actively participating in treatment, as was evidenced by his unwillingness to honestly self-disclose the facts related to his instant offense, his substance abuse history, and poor treatment participation." (Id. at p. 36). In response to questioning by Defendant Rhinehart, Plaintiff was noted to be "evasive, passive-aggressive, and tried to give the appearance of participating in the team meeting without actually self-disclosing anything of real substance." (Id.). Thus, "the treatment team unanimously to expel [Plaintiff] from the RDAP, as it was abundantly obvious that he wasn't really participating in treatment in the first place." (Id.).

According to Defendant Rhinehart, Plaintiff's history of non-compliance with the RDAP's participation requirements differed significantly from the RDAP histories of the 18 inmates identified in the complaint as having been "similarly situated" to Plaintiff. In particular, Defendant Rhinehart declares the following:

> 8.  I have reviewed the RDAP records of the 18 inmates at pages 9-11 of the Complaint filed in the above-captioned civil action to determine if any of the inmates had issues that were similar to inmate Grejda's noted issue. After a review of the records of the 18 inmates listed in the Complaint, I determined none of the inmates had issues similar to inmate Grejda's. Unlike the inmates listed in the Complaint, inmate Grejda's issue was his continued failure to participate in RDAP treatment. At no point between the time his behavior was first brought to his attention and the time he was advised he was being expelled from the RDAP, did he correct his noted lack of earnest participation. Also, unlike the inmates listed in the Complaint, prior to inmate Grejda's expulsion from RDAP, he was given an extra opportunity to correct his behavioral issues during the interview by his treatment team and me. Although he had been warned and counseled on numerous occasions regarding his unwillingness to share his potential feelings and history during RDAP sessions, during the October 2[6], 2010 interview he remained evasive,

passive-aggressive, and not compliant with the treatment team's therapeutic recommendations, or his signed agreement to participate in the RDAP. Because none of the inmates listed in the Complaint shared these traits and behaviors with inmate Grejda, he has not demonstrated how he was treated differently with other prisoners in his circumstances. In reality, inmate Grejda was not treated any differently from inmates who chose not to remedy their behavioral issue after being advised of the potential disqualifying behavior.

(ECF No. 11-6, Defendant Rhinehart's Declaration, at ¶ 8).

Thus, Plaintiff has failed to satisfy his burden of demonstrating that the individuals he alleges "[were] treated differently are so similar to [him] that there is no rational basis for the distinctions which Defendants ma[d]e." Little v. Terhune, 200 F.Supp.2d 445, 451 (D.N.J. 2002), quoting Holy Name Soc'y v. Horn, 2002 WL 959408, at *13 (E.D.Pa. Aug. 21, 2001).

In fact, with regard to discretionary decisions, courts in this Circuit have found it improbable that prisoners can be found to be similarly situated to one another for equal protection purposes, under any circumstances. See Rowe v. Cuyler, 534 F.Supp. 297, 301 (E.D.Pa. 1982), aff'd 696 F.2d 985 (3d Cir. 1982) ("[i]t is difficult to believe that any two prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics"). Accord Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa. Sept. 5, 1997); Adams v. McAllister, 798 F.Supp. 242, 246 (M.D.Pa. 1992); Carter v. Zimmerman, 1989 WL 64581 (E.D.Pa. June 12, 1989), aff'd 897 F.2d 521 (3d Cir. 1990); Johnson v. Paparozzi, 219 F.Supp.2d 635, 644 (D.N.J. 2002); Bagwell v. Brewington-Carr, 2000 WL 1728148, at * 19 (D.Del. Apr. 27, 2000). Thus, Plaintiff cannot meet his burden of demonstrating that he was similarly situated to other inmates who allegedly received more favorable treatment than he. As a result, summary judgment should be granted in favor of Defendants on Plaintiff's equal protection claim.

**5.** ***Ex Post Facto* Claim**

The final claim to be considered is Plaintiff's claim that he was removed from the RDAP due to the retroactive application of an "October 15, 2010 protocol that was put in effect after the complained of conduct" that caused his removal. As a result, Plaintiff claims that the *Ex Post Facto* Clause was violated because he "was punished for something that was not punishable" prior to October 15, 2010.

The *Ex Post Facto* Clause of the United States Constitution provides that "[n]o state shall . . . pass any . . . *ex post facto* law." U.S. Const. Art. 1, § 10. The Supreme Court has instructed that "[t]o fall within the *ex post facto* prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 117 S. Ct. 891, 896 (1997) (citation and quotation omitted).

In analyzing whether a law violates the *Ex Post Facto* Clause, the courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995). See also Garner v. Jones, 529 U.S. 244, 255 (2000) (when the rule at issue does not by its own terms show a significant risk, the burden is on the parole applicant to demonstrate "that its retroactive application will result in a longer period of incarceration than under the earlier rule"); Johnson v. United States, 529 U.S. 694 (2000) (to succeed in *ex post facto* claim petitioner must prove that legislation increases the penalty from whatever the law provided when the criminal act was committed.). Cf. Hameen v. State of Delaware, 212 F.3d 226, 240 (3d Cir. 2000) (focus of *ex post facto* inquiry is not on whether legislative change produces some ambiguous sort of disadvantage ... rather, proper focus is whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable) (citations omitted).

Here, Plaintiff cannot show that the alleged application of the "October 15, 2010

protocol" to expel him from the RDAP resulted in a longer period of incarceration or increased the penalty for the crime for which Plaintiff is incarcerated. The only effect of Plaintiff's expulsion from the RDAP is that he lost an opportunity to become eligible for a sentence reduction. No time was added to his sentence, nor was any additional punishment administered. Thus, Plaintiff has failed to set forth a cognizable *ex post facto* claim, and such claim should be dismissed.

**III**     **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [ECF No. 11], be granted.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 20, 2012

cc:     The Honorable Sean J. McLaughlin
         United States District Judge